NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0964n.06

No. 10-6335

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

C. FRED DANIELS, as trustee and litem in substitution for
Regions Bank, dba Regions Morgan Keegan Trust as trustee
for the Juanita H. Schaffer irrevocable trust; THE TRUST
UNDER WILL OF MARY B. WELCH; THE TRUST UNDER
LAST WILL AND TESTAMENT OF J.S. COOPER FOR
BENEFIT OF CORRINE COOPER; THE TRUST UNDER
WILL OF WILLIAM THOMAS HARDISON, SR.; THE
TRUST UNDER WILL OF HORACE SMALL FOR
BENEFIT OF ROGER SMALL; THE MAMIE C. HOWELL
TRUST UNDER AGREEMENT; THE DAVID T.
UNDERWOOD, JR. REVOCABLE TRUST; THE TRUST
FOR NOEL A.M. GAYLOR UNDER LAST WILL AND
TESTAMENT OF ANN GAYLOR; THE TRUST UNDER
WILL OF JESSE S. COOPER FOR BENEFIT OF JUDITH
ANNE CARRAWAY; THE SANDRA CARR REVOCABLE
TRUST UNDER AGREEMENT; A CLASS OF ALL
SIMILARLY SITUATED TRUSTS AND CUSTODIAL
ACCOUNTS, together with their respective trustees,
representatives and fiduciaries,

      Plaintiffs-Appellants,

v.

MORGAN ASSET MANAGEMENT, INC.; MORGAN
KEEGAN & COMPANY, INC.; MK HOLDINGS, INC.;
REGIONS FINANCIAL CORPORATION; JAMES C.
KELSOE, JR.; ALLEN B. MORGAN, JR.; J. KENNETH
ALDERMAN; BRIAN B. SULLIVAN; JOSEPH C. WELLER;
J. THOMPSON WELLER; CHARLES D. MAXWELL;
MICHELL F. WOOD; DAVID H. TANNEHILL; JOHN
BOSTON; CHARLIE A. MURRAY; MATT R. SMITH;
DOUG WILLIAMS; GARY PARTRIDGE; JENNY JOHNS;
GUILLERMO R. ARAOZ; JOHN 1-20 DOES,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Aug 31, 2012
LEONARD GREEN, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

OPINION

**Before:  BATCHELDER, Chief Judge; NORRIS and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge**.  A group of trust funds and C. Fred Daniels, as Trustee *ad Litem*,[1] brought a state-law class action against various corporate affiliates for breach of contract and negligence.  Holding that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227, bars Plaintiffs' claims, the district court dismissed the complaint.  Plaintiffs argue that their claims are not precluded by SLUSA because they are not based on any untrue statement or omission of material fact nor do they involve the use of any manipulative or deceptive devise in connection with the purchase, sale, or retention of a security. We AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal arises from dismissal of Plaintiffs' First Amended Complaint, we begin review by accepting as true the facts alleged therein.  Regions Bank does corporate-trust business under the name Regions Morgan Keegan Trust ("Regions Trust") and serves as a corporate trustee, custodian, or agent of certain accounts.  Acting in this capacity, Regions Trust became the record owner of shares of seven Regions Morgan Keegan mutual funds ("RMK Funds").[2]

Regions Trust entered into two written Investment Advisory Services Agreements with Morgan Asset Management ("MAM") —the "2003 Contract" and the "2007 Contract"—for the

---

[1]Daniels was appointed Trustee to substitute for Regions Bank d/b/a Regions Morgan Keegan Trust in its role as trustee.

[2]These funds include Regions Morgan Keegan Select Short Term Bond Fund; Regions Morgan Keegan Select Intermediate Bond Fund; Regions Morgan Keegan Select High Income Fund; RMK Multi-Sector High Income Fund, Inc.; RMK Advantage Income Fund, Inc.; RMK Strategic Income Fund, Inc.; and RMK High Income Fund, Inc.

provision of investment services by MAM. In both Contracts, MAM agreed to recommend investments to be purchased for, or sold from, clients' Trusts and Custodial Accounts. Both Contracts required MAM to perform these services "with ordinary skill and diligence."

Compliance with its contractual duties required MAM to use all available information to continuously evaluate and investigate whether the RMK Funds in which the Trusts and Custodial Accounts were invested remained appropriate and advantageous investments. Plaintiffs allege that negative information concerning the RMK Funds and the vulnerability of their assets was reasonably available to MAM at the end of 2006 and in the first half of 2007, such that MAM should have determined that those funds were no longer appropriate investments. Plaintiffs specifically allege that MAM, Regions Financial, Morgan Keegan, and MK Holdings, Inc. (collectively, the "Regions Morgan Keegan Entity Defendants") "caused the Trust and Custodial Accounts (through Regions Trust as trustee) to make, continue, and hold investments in the RMK Funds during the Class Period, rather than to discontinue and liquidate them." The individually named Defendants were officers, directors, or employees of one or more of the Regions Morgan Keegan Entity Defendants during the relevant time period.

Compared with peer funds, the RMK Funds were disproportionately invested in illiquid securities backed largely by mortgages. Following the adverse market events of 2007 and 2008, the RMK Funds suffered greater losses than those suffered by peer funds and were comparatively slower to rebound. These losses caused the Trusts and Custodial Accounts to suffer substantial financial losses and implicated the fiduciary duties of Regions Trust. Perceiving a potential conflict of interest between its role as a fiduciary for the Trusts and Custodial Accounts and its role as a defendant in several federal securities class actions, Regions Trust petitioned the Probate Court of Jefferson

3

County, Alabama to appoint a Trustee *ad Litem.* The court appointed Plaintiff C. Fred Daniels as Trustee *ad Litem* for the limited purposes of monitoring, evaluating, and participating in litigation in substitution for Regions Trust on behalf of the Trusts and Custodial Accounts relating to the RMK Funds.

In furtherance of this appointment, Daniels filed at least five other putative class actions against the same or similar defendants in the Western District of Tennessee, each alleging violations of federal securities laws. *See Daniels v. Morgan Keegan & Co.*, Nos. 08-2452 et al., 2009 WL 2749963 (W.D. Tenn. Aug. 26, 2009) (consolidating actions). Daniels filed the present class action in Shelby County Circuit Court on behalf of all Trusts and Custodial Accounts (and their respective trustees, representatives, and fiduciaries) for which Regions Trust is or was a trustee or a directed trustee, custodian, or agent and that owned or held shares in the RMK Funds at any time during the period of November 9, 2006 through November 9, 2009. Plaintiffs brought three claims against the Regions Morgan Keegan Entity Defendants: one breach of contract claim for each of the 2003 and 2007 Contracts and one negligence claim. Plaintiffs also asserted one negligence claim against the individually named Defendants.

The Defendants removed the action to the Western District of Tennessee and moved to dismiss Plaintiffs' complaint on the basis that it failed to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and its allegations were barred by SLUSA. Plaintiffs amended their complaint by adding additional information about the relationship of the Regions Morgan Keegan Entity Defendants and further allegations about the Defendants' obligations. Defendants again moved to dismiss this First Amended Complaint for substantially the same reasons raised in their

4

first motion. Plaintiffs opposed the Motions to Dismiss and proposed a Second Amended Complaint.

In the First Amended Complaint, Plaintiffs alleged that Regions Financial sits atop a corporate structure of overlapping and interwoven enterprises that includes the other Regions Morgan Keegan Entity Defendants and through which those Defendants, and not MAM, made the ultimate investment determinations with regard to Plaintiffs' Funds. Specifically, and with greater detail in their proposed Second Amended Complaint, Plaintiffs allege that: the Regions Morgan Keegan Entity Defendants operated MAM "as a mere instrumentality, agent, or alter ego"; several Regions Morgan Keegan Entity Defendants had a financial interest in the RMK Funds; and this intertwined corporate structure made it impossible for MAM to exercise independent judgment in determining whether RMK Funds should be purchased or retained. Based on this conduct, Plaintiffs assert the Regions Morgan Keegan Entity Defendants are liable for breaching the 2003 and 2007 Contracts and that all Defendants are liable for negligence.

The district court held that Plaintiffs' claims amounted to allegations that the "Defendants misrepresented how investments would be determined and omitted a material fact: an undisclosed conflict of interest that required Defendants to invest assets of the trusts and custodial accounts in the RMK Funds." *Daniels v. Morgan Asset Mgmt., Inc.*, 743 F. Supp. 2d 730, 738 (W.D. Tenn. 2010). On this basis, the court held that SLUSA precluded Plaintiffs' claims, dismissed the First Amended Complaint, and because amendment would be futile, the court denied Plaintiffs' Motion for Permission to File Second Amended Complaint and dismissed Plaintiffs' suit with prejudice. Plaintiffs challenge the district court's finding of SLUSA preclusion and its judgments dismissing Plaintiffs' First Amended Complaint and denying leave to amend.

5

## II. DISCUSSION

### A. Standard of Review

This court reviews a district court's dismissal of complaint under Rule 12(b)(6) de novo. *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308 (6th Cir. 2009). When considering a motion to dismiss, all well-pled allegations in the complaint are treated as true. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). In order to survive a motion to dismiss under Rule 12(b)(6), allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the allegations plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Denial of leave to amend is normally reviewed for abuse of discretion. *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995). However, where a district court denies a plaintiff's motion to amend based on its determination that the amended pleading would not withstand a motion to dismiss, we review the decision de novo. *Demings v. Nationwide Life Ins. Co.*, 593 F.3d 486, 490 (6th Cir. 2010). Finally, we review for abuse of discretion a district court's decision to dismiss a plaintiff's claims with prejudice. *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 553 (6th Cir. 2011) (citing *Brown v. Matauszak*, 415 F. App'x 608, 611 (6th Cir. 2011)).

### B. Preclusion of Plaintiffs' claims

#### 1. SLUSA Preclusion

SLUSA "provides that private state-law 'covered' class actions alleging untruth or manipulation in connection with the purchase or sale of a 'covered' security may not 'be maintained in any State or Federal court.'" *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636-37 (2006) (citing

15 U.S.C. § 77p(b)). The statute's history begins with enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, which addressed "perceived abuses" of class action claims in litigation involving nationally traded securities and imposed "special burdens on plaintiffs." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006). In response to the exercise of state court remedies involving securities, Congress enacted SLUSA which precludes most securities-fraud class-action suits brought under state law. However, "it does not preclude any state-law cause of action outright; it merely removes the class-action mechanism as a means of vindicating certain state-law claims." *Demings*, 593 F.3d at 491 (citing *Dabit*, 547 U.S. at 87). Specifically, SLUSA provides:

> (b) Class action limitations
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

A party seeking to establish that an action falls within SLUSA's preclusive scope must show that the action satisfies four criteria: (1) the action is a "covered class action" under SLUSA, which means it involves more than fifty members; (2) the action purports to be based on state law; (3) the action involves a "covered security," which means a nationally listed security; and (4) the complaint alleges "an untrue statement or omission of a material fact" or the use of a "manipulative or deceptive device or contrivance" in connection with the buying or selling of a covered security. *Id.*

7

§§ 77p(b), (f)(2)(A), (f)(3); *Segal*, 581 F.3d at 309. Although the district court found that the First Amended Complaint met all preclusion criteria, Plaintiffs challenge only whether the Complaint satisfies the fourth criteria's allegation of an untrue statement or omission of material fact.

2.      *Untrue Statement or Omission of a Material Fact*

Our analysis of this SLUSA provision is controlled by our prior precedent. The circuits have split on the role an untrue statement or omission of material fact must play in the complaint in order to find SLUSA preclusion. See *Brown v. Calamos*, 664 F.3d 123, 127-28 (8th Cir. 2011) (discussing split). This Circuit has held that "[SLUSA] does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple." *Segal*, 581 F.3d at 311; *see also Atkinson*, 658 F.3d at 555. This approach has been referred to as the "literalist approach," *Brown*, 664 F.3d at 127-28, and authorizes a more expansive reading of SLUSA's reach than other circuits have adopted. *Id*. at 127. Other approaches include distinguishing inessential factual allegations from those critical to a claim's success, *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3rd Cir. 2008), and dismissing a complaint that contains prohibited allegations without prejudice to allow amendment, *Stoody-Broser v. Bank of Am.*, 442 F. App'x 247, 248 (9th Cir. 2011).

It is certainly true that claims of breach of contract and negligence do not require proof of fraud as a necessary element of either cause of action. However, the literalist approach of our circuit makes it clear that the inquiry is only whether the complaint includes these type of allegations, not whether they are material elements of a claim. *Atkinson*, 658 F.3d at 555. In deciding whether SLUSA applies, this court reviews "'the substance of a complaint's allegations,' and claimants

8

cannot 'avoid its application through artful pleading that removes the covered words . . . but leaves in the covered concepts.'" *Id.* (quoting *Segal*, 581 F.3d at 310-11). Therefore, even though fraud is not necessary to prove breach of contract or negligence in every instance, if Plaintiffs' Complaint contains any allegations of untrue statements or omissions of material facts on the part of the Defendants in the covered context, SLUSA precludes Plaintiffs claims.

Under the standard set out in *Segal* and *Atkinson*, SLUSA precludes Plaintiffs' claims. Plaintiffs include disclaimers in each Complaint, asserting that the "Complaint does not allege, explicitly or implicitly, and is not based or dependent upon, directly or indirectly" any allegations of untrue statements, omissions of material fact, or the use of any manipulative or deceptive device. Under our precedent, however, removing covered words from the complaint or disclaiming their presence is ineffective to elude SLUSA's prohibitions. *Segal*, 581 F.3d at 310-311; *see also Atkinson*, 658 F.3d at 555. Therefore, we turn to review of the substance of the Complaint.

The district court determined that the substance of Plaintiffs' First Amended Complaint and proposed Second Amended Complaint was that Defendants misrepresented how investments would be determined and omitted a material fact: an undisclosed conflict of interest that required Defendants to invest assets of the Trusts and Custodial Accounts in the RMK Funds. Plaintiffs assert the district court erred by relying on allegations unrelated to the factual bases for the cause of action and only relevant to support "Plaintiffs' assertion that the 'corporate veil' of Morgan Management—Regions Trust's counterparty to the Contracts—should be pierced so that the other corporate defendant, including Morgan Keegan and Regions Financial, are also liable for Morgan Management's breach of the Contracts and negligence."

9

Therein lies the difficulty under our precedent. As Plaintiffs point out, in order to show that Defendants other than MAM are liable on the Contracts (to pierce the veil), Plaintiffs must prove that a statement in the Contracts—the representation that MAM would be the party performing the Contract services—was untrue. By relying on the allegation that, despite the contractual duties of MAM, undisclosed parties controlled the investment decisions, Plaintiffs' claims are grounded in fraud.[3] *Cf. Brown*, 664 F.3d at 129-31 (finding that, although breach of the duty of loyalty does not necessarily require proof of fraud, given the characteristics of the defendants' capital structure, a charge of breach of loyalty without those allegations might not be plausible).

Further, any uncertainty that Plaintiffs' claims against MAM would involve proof of fraudulent conduct is dispelled in the Second Amended Complaint in which Plaintiffs seek to add "specificity and detail to their claims and allegations." In the Second Amended Complaint, Plaintiffs expressly allege that MAM's president, Carter Anthony, "knew and understood that because he and [MAM] were under the control of Morgan Keegan and Regions Financial, and Morgan Keegan and Regions Financial were financially interested in the RMK Funds . . . , if Mr. Anthony, as President of Morgan Management, attempted to keep RMK Funds out of the Trust and Custodial Accounts, he would be fired." Plaintiffs in substance allege MAM both made an untrue statement at the time it contracted and omitted a material fact during the contractual period by failing to disclose this conflict of interest. *See, e.g., Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1124 (8th Cir. 2008) (concluding that SLUSA prohibits "state-law claims that a trustee breached its fiduciary duty by

---

[3]SLUSA preclusion would be less clear based on the First Amended Complaint if Plaintiffs had sued only MAM. A complaint excluding allegations of intertwined corporate structures and conflicts of interest and only charging that MAM negligently failed to notice the risks inherent in the RMK Funds and failed to advise Plaintiffs to stop investing in the Funds could survive preclusion.

10

failing to disclose conflicts of interest in its selection of nationally-traded investment securities"). Given that the First Amended Complaint and the Second Amended Complaint incorporate this alleged untrue statement and omission into each claim, including claims against MAM, SLUSA acts to preclude all of Plaintiffs' claims.

Finally, Plaintiffs also argue the district court erred because the court's "inquiry is limited to claims and allegations actually made, and does not extend to claims or allegations the court believes 'could have been made' based on the factual setting from which the complaint arises." This argument is similar to that made in *Atkinson* by the shareholders of the same Trusts and Custodial Accounts at issue here. The *Atkinson* allegations more overtly included fraud—the shareholders opened their complaint by alleging that the defendants "fail[ed] to provide truthful and complete information about the Funds' portfolios"—but also argued that the allegations "merely form 'background information' for their nine claims." *Atkinson*, 658 F.3d at 554-55. This court rejected the shareholders' argument based on the literalist approach established in *Segal*. *Id.* That reasoning weighs more in favor of preclusion here because Plaintiffs' allegations are directly tied to their theory of liability against MAM and all other Defendants.

This court has not decided the question of whether SLUSA precludes an entire action, as opposed to specific claims, if the complaint contains any covered allegations. *See id.* at 555-56 (suggesting, but not deciding, that SLUSA's plain language may preclude the entire complaint). However, because all of Plaintiffs' claims incorporate allegations of fraud, we need not decide this issue here.

11

**C.    Motion to Amend**

The district court denied Plaintiffs' Motion for Permission to File Second Amended Complaint because the court determined it would be futile to do so given that SLUSA precluded the allegations in the Second Amended Complaint as well. As discussed above, the Second Amended Complaint more clearly alleges the prohibited fraud allegations than the First Amended Complaint by detailing specifically the domination of the other Regions Morgan Keegan Defendants over MAM, those Defendants' financial interest in the RMK Funds, and the awareness of MAM's president of this situation. Thus the district court did not err in denying the motion because amendment would have been futile. Further, because this proposed amendment would be Plaintiffs' third failed attempt to file an action that is not precluded by SLUSA, the district court did not abuse its discretion in dismissing Plaintiffs' suit with prejudice. *See Atkinson*, 658 F.3d at 556 (affirming dismissal with prejudice); *Segal*, 581 F.3d at 312 (same).

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Plaintiffs' First Amended Complaint, the court's denial of Plaintiff's Motion for Permission to File Second Amended Complaint, and its dismissal of Plaintiffs' suit with prejudice.